NOT FOR PUBLICATION                                                                              CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                                                        :
JAMES L. DELANEY and BARBARA POLI,   :
on behalf of themselves and others                       :
similarly situated,                                                 :
                                                                        :
        Plaintiffs,                                              :      Civ. No. 06-5134 (JAP)
                                                                        :
        v.                                                               :
                                                                        :      **OPINION**
AMERICAN EXPRESS COMPANY and         :
AMERICAN ENTERPRISE LIFE INSURANCE :
COMPANY,                                                        :
                                                                        :
        Defendants.                                             :
_____:

PISANO, District Judge.

Purporting to represent a nationwide class of similarly situated individuals, Plaintiffs James L. Delaney ("Delaney") and Barbara Poli ("Poli") (together "Plaintiffs") brought this action against Defendants American Express Company ("AMEX") and American Enterprise Life Insurance Company ("AEL") (together "Defendants") alleging claims of fraudulent misrepresentation and omission, negligence, wantonness, breach of contract, conspiracy, and violation of state consumer protection statutes arising out of Plaintiffs' purchases of annuities from AEL. The crux of Plaintiffs' claim is that Defendants fraudulently coerced them into purchasing the annuities by promising them a 1.00% "bonus" rate of interest, and that Defendants recaptured this bonus through undisclosed fees, charges, and expenses. Currently before the Court are Defendants' Motions to Dimiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Court has

jurisdiction under 28 U.S.C. § 1332 and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, the Court grants Defendants' motions and dismisses Plaintiffs' Complaint.

**I. BACKGROUND**

This is a putative class action on behalf of all individuals who purchased bonus fixed-rate annuities from AMEX and AEL.[1]  The annuities at issue provide for bonus rates of interest in the first year, with annual renewal rates set by AEL subject to a guaranteed minimum rate of 3.00%. (*See* November 29, 2006 Declaration of Jeffrey Soos ("Soos Decl."), Exs. F at 8, G at 8).  On or about January 31, 2003, Delaney, a resident of Hunterdon County, New Jersey, purchased AEL Annuity Contract No. 9920-5938589 with an initial investment of $15,000.  (Soos Decl., Ex. C). Delaney did not deal directly with AEL or AMEX, but rather, he purchased the annuity through Robert Laird ("Laird"), an employee of Quick and Reilly in Flemington, New Jersey.  Pursuant to the terms of Delaney's contract, the one-year base interest rate on his annuity was 3.00%.  The contract further provided, however, that Delaney would receive an additional bonus interest rate of 1.00%, increasing his first-year interest rate to 4.00%.  (Soos Decl., Ex. C, F at 3).

On or about June 9, 2003, Poli, a Suffern, New York resident, purchased AEL Annuity Contract No. 9920-6016081 with an initial investment of $60,000.  (Soos Decl., Ex. D).  Poli purchased her annuity through Anthony Spizzo ("Spizzo"), an employee of Quick and Reilly in Mahwah, New Jersey.[2]  The base interest rate for Poli's annuity was 3.25%.  With the same

---

[1] AEL, the seller of the annuities at issue, is a wholly owned indirect subsidiary of Amerprise Financial, Inc.  At all times relevant to this action, however, AEL was a wholly owned indirect subsidiary of AMEX.

[2] Plaintiffs have not asserted claims against Laird, Spizzo, or Quick and Reilly.

1.00% bonus interest rate that Delaney received, the actual first-year interest rate for Poli's annuity was 4.25%. (Soos Decl., Ex. D, G at 3).

In connection with their purchases, Plaintiffs completed a Quantum Select Annuity Fixed Annuity Application and Contract Data ("Annuity Application"), received the AEL Product Disclosure Statement ("Disclosure Statement"), and received an Annuity Contract (together "Annuity Documents"). (*See* Soos Decl., Exs. C, D, E, F, G).[3] In short, the Annuity Documents entitle Plaintiffs to receive a 1.00% bonus rate of interest during the first year of the annuity and renewal rates determined by AEL in subsequent years, subject to a guaranteed minimum rate of 3.00%. (Soos Decl., Exs. F at 8, G at 8). The Disclosure Statement, which Plaintiffs acknowledged having "received, read and understood," also provides that in exchange for the additional first-year rate, the base rate on the annuity "is lower than it would have been had the additional first-year rate not been applied." (Soos Decl., Exs. C, D, E).

Notwithstanding the foregoing disclosures and express terms, Plaintiffs claim that Defendants' disclosures "were inadequate, unreasonable, fraudulent, and beyond the understanding of the purchasers" and that Defendants, through their agents, made knowingly false representations, and "actively suppressed and concealed . . . the true nature" of the annuities. (Complaint ¶¶ 18-19, 21). The true nature of the annuities, in Plaintiffs' view,

---

[3] Notwithstanding the fact that Plaintiffs did not attach copies of the Annuity Documents to their Complaint, the Court has discretion to consider these documents (without converting Defendants' motion to dismiss into a motion for summary judgment) because they are integral to Plaintiffs' allegations and they are incorporated, by reference, in the Complaint. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (stating that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment").

included a fraudulent and deceptive design which allowed Defendants to recapture and recoup the advertised bonus "through an undisclosed penalty, cost and/or charge." (*Id.* at ¶ 10). Specifically, Plaintiffs argue that Defendants designed the annuities "with lower renewal credited rates . . . in order for Defendants to . . . recoup and recapture the entire bonus paid on the annuity." (*Id.* at ¶ 14). As such, they contend, the bonus rate is no more than a "deceptive marketing ploy" and "Defendants breached the annuity contract by failing to provide a permanent bonus." (*Id.* at ¶¶ 11, 16).

On October 25, 2006, Plaintiffs filed a seven-count Complaint alleging (1) fraud by misrepresentation; (2) fraud by omission/fraudulent suppression; (3) negligent hiring, training, and/or supervising its agents; (4) wantonly hiring, training, and/or supervising its agents; (5) breach of contract; (6) civil conspiracy to commit, *inter alia*, fraudulent misrepresentations, suppression, and acts of negligence, wantonness, breach of duty, and breach of contract; and (7) unfair competition in violation of the New Jersey Consumer Fraud Act. AEL now moves for dismissal of Plaintiffs' Complaint on the grounds that Plaintiffs have not alleged and cannot prove that AEL credited their annuities with any rate of interest other than what was promised to them, or that AEL breached any provisions of the Annuity Contract. AMEX incorporates the arguments set forth by AEL and adds that Plaintiffs fail to state a claim against AMEX because it is "merely a holding company, and does not design, price, market, sell or administer any annuities, much less the annuities that Plaintiffs purchased." (AMEX's Br. at 1). The Court will not analyze the latter argument because it relies heavily on the Affidavit of Stephen P. Norman, which has been stricken as containing information extraneous to the Complaint. *Delaney v. American Express Co.*, No. 06-5134 (D.N.J. Feb. 7, 2007) (order striking Norman Affidavit).

## II. DISCUSSION

### A. *Standard of Review under Federal Rule of Civil Procedure 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. A motion to dismiss should be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004). Although the Court must accept the allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff, *see Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000), the Court is not required to accept as true mere "unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino, Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quotation omitted).

### B. *New Jersey Law Applies to Plaintiffs' Claims*

When exercising diversity jurisdiction, a federal court must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). As such, New Jersey choice-of-law rules apply to this dispute. Under those rules, a contractual choice-of-law provision is given effect unless it violates the public policy of New Jersey. *Kalman Floor Co., Inc. v. Joseph L. Muscarelle, Inc.*, 196 N.J. Super. 16, 481 A.2d 553, 554 (App. Div. 1984). The Annuity Contract that Plaintiffs signed contains a choice-of-law clause stating that the contract "is governed by the laws of the state in which it is delivered." (Soos Decl., Exs. F at 13, G at 13). It is undisputed that both Annuity Contracts were delivered in New Jersey, and Plaintiffs do not contend that the choice-of-law clause violates any public policy. Thus, the Court will enforce the contractual choice-of-law provision and apply New Jersey law to

Plaintiffs' claims. *See Sullivan v. Sovereign Bancorp, Inc.*, No. 99-5990, 2001 WL 34883989, at *6 (D.N.J. Jan. 19, 2001).

### C. Analysis

Plaintiffs assert a number of different claims, each of which the Court addresses below. The common theme of Plaintiffs' claims, however, is that "Defendants' design of their bonus annuity product built in an undisclosed cost and/or charge that resulted in an increased 'spread' designed to recoup and recapture the entire bonus paid in year one." (Compl. ¶ 14). As discussed below, what Plaintiffs characterize as a deceptive design is clearly explained in the Annuity Documents. Indeed, the Annuity Documents expressly provide that purchasers of the annuity will be credited a bonus interest rate that is limited to the first year of the annuity, and that Defendants' have the sole discretion to establish the rate that will apply in subsequent years, subject to a guaranteed minimum rate of interest. As such, the terms set forth in the Annuity Documents preclude a finding that Defendants engaged in a deceptive scheme to recoup the first-year bonus.

Although Plaintiffs contend that this matter should not be decided until the parties engage in discovery and develop a full record, the Court finds that argument unpersuasive. At this stage in the litigation, the Court has the benefit of all of the controlling documents and it is clear from their Complaint that Plaintiffs do not even allege that Defendants failed to meet their obligations as set forth in the Annuity Documents. Furthermore, having reviewed the Annuity Documents, the Court concludes that Defendants have not misrepresented or omitted the material terms of the annuities that Plaintiffs purchased.

Plaintiffs are dissatisfied with the annuities they purchased from AEL, in part, because

6

they could have purchased other annuity products that feature higher interest rates. Dissatisfaction with a product or with the terms of a contract, however, does not provide the basis for a claim for relief regardless of the particular legal theory that a plaintiff invokes. As discussed below, the Court finds that each Count of Plaintiffs' Complaint is legally insufficient and that Plaintiffs have not stated a claim upon which relief can be granted. Therefore, the Court grants Defendants' motions and dismisses Plaintiffs' Complaint with prejudice pursuant to Rule 12(b)(6).

**1. Breach of Contract**

To maintain a claim for breach of contract under New Jersey law, a plaintiff must allege and ultimately be able to prove: "(1) [the existence of] a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002). In Count Five of their Complaint, Plaintiffs claim that "Defendants impliedly guaranteed that Plaintiffs . . . would be paid a 1.00% bonus, in the first year of issuance, allowing them to permanently realize and gain the benefit of said bonus" and that Defendants "breached these terms" and the covenant of good faith and fair dealing by entirely recouping the bonus . . . through an undisclosed self-financing scheme." (Compl. ¶¶ 69-71).[4] In response, Defendants

---

[4] Though it is true that "every contract in New Jersey contains an implied covenant of good faith and fair dealing," *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 690 A.2d 575, 587 (1997), Plaintiffs cannot show that Defendants engaged in any conduct having the "effect of destroying or injuring the right of the other party to receive the fruits of the contract," *Pallisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 207 A.2d 522, 531 (1965). Indeed, as explained below, Plaintiffs do not dispute that they received all they were entitled to under the express terms of the Annuity Documents. As such, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is insufficient as a matter of law.

argue that Plaintiffs cannot recover for breach of contract because Plaintiffs cannot identify a specific provision that Defendants allegedly breached, Defendants have fulfilled their obligations under the express terms of the Annuity Contract, and Plaintiffs cannot establish that they suffered any damages.

Plaintiffs concede that if Defendants promised no more than "a specified fixed rate in year one and a specified minimum rate in subsequent years . . . there would be no lawsuit." (Pltfs' Br. at 1). Plaintiffs argue that Defendants promised more than that because their use of the term "bonus" to describe the "specified fixed rate in year one" conveyed to Plaintiffs that they would realize and permanently retain the bonus. In the Court's view, Plaintiffs attach unwarranted significance to the term "bonus." Regardless of the term used to describe the first-year rate of interest, the Annuity Documents set forth a clear and complete statement of the contract terms, including Defendants' promise to credit Plaintiffs a 1.00% bonus rate of interest in the first year only and a base rate of at least 3.00% thereafter.

Indeed, the Disclosure Statement that both Delaney and Poli "received, read and understood" unambiguously states that bonus will only be credited in the first year only: "If you are purchasing the annuity with a feature(s) that includes an additional first-year rate, this feature will no longer be credited after one (1) year." (Soos Decl., Ex. E). Similarly, the Annuity Contract provides that if a purchaser selected, as Plaintiffs did, the "one-year guarantee period, [AEL] will credit a one-year 1% bonus rate for [the] single payment." (Soos Decl., Exs. F at 8, G at 8). The Disclosure Statement also notes that the interest rates in subsequent years would be lower than the first-year rate specifically because Plaintiffs received a bonus rate of interest in the first year: "In return for the additional first-year rate on this annuity the base rate is lower than it

8

would have been had the additional first year rate not been applied." (Soos Decl., Ex. E).  As to the renewal rates, the Disclosure Statement provides that the rates applicable after the first year are determined "by [AEL] and at [AEL's] discretion," based on a number of factors including, "the interest rate environment, [amounts] earned on investments backing these annuities, the rates currently in effect for new and existing company annuities, product design, competition, and the company's revenues and expenses." (*Id.*)  Finally, the Annuity Contract states that, although the "base rate . . . and its accumulated interest may change" after the first year, AEL guarantees a base rate of "at least 3.00% interest, regardless of future economic conditions." (Soos Decl., Ex. F at 8, G at 8).

     Plaintiffs do not allege that Defendants failed to credit Plaintiffs the 1.00% bonus rate in the first year or breached their promise to provide a minimum base rate of 3.00% in subsequent years.  Instead, Plaintiffs argue that the design of the annuity, and specifically the lower renewal rates, rendered the first-year bonus rate artificial.  The fact that AEL's base rates were lower in subsequent years, however, cannot support a claim for breach of contract because those rates comply with the express terms of the Annuity Contract.  Thus, Plaintiffs cannot show that Defendants failed to perform on their contractual obligations.

     Moreover, Plaintiffs cannot prove that they suffered any damages.  In an action for breach of contract under New Jersey law, the aggrieved party is entitled to the "amount of damages . . . which . . . will put that party in the same position it would have been in if the breaching party had performed the contract in accordance with its terms. . . ." *Magnet Res., Inc. v. Summit MRI, Inc.*, 318 N.J. Super. 275, 723 A.2d 976, 985 (App. Div. 1998).  As explained above, Plaintiffs have not alleged that they received anything less than the interest rates set forth in the Annuity

Documents. As a result, Plaintiffs have not suffered any damages and their claim for breach of contract fails as a matter of law.

### 2. Fraud by Misrepresentation and Fraud by Omission

In Count One of their Complaint, Plaintiffs allege that Defendants fraudulently misrepresented that "the annuity had a bonus interest rate to be paid in year one, and Plaintiffs and the Class members would permanently realize the full benefit of the guaranteed bonus. (Compl. ¶ 37). In fact, Plaintiffs contend, the design of the annuity prevented them from "permanently realiz[ing] the full benefit of the guaranteed bonus." (*Id.* at ¶ 38). Plaintiffs claim they suffered damages as a result of the alleged misrepresentations because, *inter alia*, "they did not receive the annuity they bargained for" and they lost the opportunity to invest in other, more suitable products. (*Id.* at ¶ 41). In Count Two, Plaintiffs contend that Defendants committed fraud by omission for failure to disclose that (1) the annuity did not provide a guaranteed permanent bonus; (2) the design of the annuity included undisclosed penalties, costs and/or charges through which Defendants recouped and recaptured the bonus; and (3) the design of the annuity was such that Plaintiffs would "self-finance" the bonus. (*Id.* at ¶¶ 47-49). Defendants argue that Plaintiffs cannot show a material misrepresentation or omission of fact, or that Plaintiffs reasonably relied on such misrepresentation or omission.

Under New Jersey law, a plaintiff must establish five elements to make out a claim for fraudulent misrepresentation or omission: "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Wartsila NSD N. Am., Inc. v. Hill Intern., Inc.*, 342 F. Supp. 2d 267,

287-88 (D.N.J. 2004); *see also Gennari v. Weichart Co. Realtors*, 148 N.J. 582, 691 A.2d 350, 367 (1997).  Although Plaintiffs claim that Defendants misrepresented that the "annuity had a bonus interest rate to be paid in year one, and Plaintiffs [] would permanently realize the full benefit of the guaranteed bonus," (*see* Compl. ¶ 37) the information provided in the Annuity Documents belies such a claim.

      Plaintiffs argue—and describe as the gravamen of their Complaint—that "[n]othing in the written materials provided that plaintiffs would receive less in subsequent years as a result of the 'bonus' interest rate in year one." (Pltfs' Br. at 9).  As explained above, however, the Disclosure Statement unambiguously states that "[i]n return for the additional first-year rate on this annuity the base rate is lower than it would have been had the additional first-year rate not been applied." (Soos Decl., Ex. E).  Further, the Annuity Documents make perfectly clear that (1) the bonus rate applies to the first year only, (2) the base rate may change in subsequent years, and (3) Defendants retained sole discretion to determine the rate in subsequent years, subject to a contractually guaranteed minimum rate.  In light of these disclosures, the Court finds as a matter of law that Plaintiffs cannot establish the existence of a misrepresentation or omission of material fact in the Annuity Documents.

      Moreover, Plaintiffs cannot establish reasonable reliance on any alleged omissions or oral representations by Defendants' agents that contradicted Defendants' written statements.  Under New Jersey law, Plaintiffs were under an obligation to examine the Annuity Documents to protect themselves from any potential oral misrepresentations made by Defendants' agents.  *See Nat'l Premium Budget Plan Corp. v. Nat'l Fire Ins. Co. of Hartford*, 97 N.J. Super. 149, 234 A.2d 683, 716 (N.J. Super. Ct. Law Div. 1969) ("[T]he law in New Jersey is generally that one

11

who sues an insurance company in fraud and deceit for the acts of its agent, and who could have protected himself by examination of the policy, is under an obligation to do so."); *see also Sayer v. Lincoln Nat'l Life Ins. Co.*, No. 07-1423, slip op. at 16 (N.D. Ala. 2006) (reasoning that a plaintiff's "ability and opportunity to read and verify the contents" of the annuity documents, "as well as her subsequent adoption of them, precludes a colorable fraud claim" based on a misrepresentation as to the annuity documents). Thus, the Court finds that Counts One and Two of Plaintiffs' Complaint do not state a claim upon which relief can be granted.

### 3. Negligent and Wanton Hiring, Training and/or Supervision

In Counts Three and Four of their Complaint, Plaintiffs allege that Defendants negligently and wantonly "hired, trained, and/or supervised its agents and representatives who sold bonus annuities." (Compl. ¶¶ 58, 63). Defendants move to dismiss these counts because the individuals that sold the annuities to Plaintiffs, Laird and Spizzo, are not employees of AEL or AMEX. Plaintiffs respond that the Laird and Spizzo, though not subject to a traditional employment relationship with Defendants, were agents of AEL and AMEX because Defendants authorized them to act on Defendants' behalf in explaining and selling the annuities.

Under New Jersey law, "the tort of negligent hiring addresses the risk created by exposing members of the public to a potentially dangerous individual." *Di Cosola v. Kay*, 91 N.J. 159, 450 A.2d 508, 515 (1982). New Jersey courts have imposed liability on employers under a theory of negligent hiring, training or supervision where "the employee commits an intentional tort . . . against the customer of a particular employer or other member of the public, where the employer knew or should have known that the employee was violent or aggressive, or that the employee might engage in injurious conduct toward third persons." *Id.* Even assuming that

there existed an agency relationship between Defendants and Laird and Spizzo, and that such a relationship is sufficient to give rise to employer liability under a negligent or wanton hiring theory, Plaintiffs have not alleged that Laird and Spizzo committed any intentional torts against them. Nor have Plaintiffs alleged that Defendants knew or should have known that these individuals were dangerous or incompetent. Further, as explained above, Plaintiffs received all that they were entitled to under the express terms of the Annuity Documents. Thus, even if they could make out a claim for negligent or wanton hiring, training and supervision, their claim would still fail because Plaintiffs have not suffered any damages.

### 4. The New Jersey Consumer Fraud Act

Next, Plaintiffs claim that Defendants "engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation" of the New Jersey Consumer Fraud Act ("Consumer Fraud Act"), N.J.S.A. 56:8-1, *et seq.* (Compl. ¶ 114).[5] In Plaintiffs' view, the violation stems from Defendants' misrepresentation that "Plaintiffs [] would permanently realize the 'bonus' in the so-called 'bonus interest rate' and concealed that, in fact, Defendants would recoup the bonus, so that Plaintiffs [] would, in the end, self-finance their own 'bonus.'" (*Id.* at ¶ 86). Defendants move to dismiss this claim because, they argue, the alleged deceptive practice was fully disclosed to Plaintiffs.

The Consumer Fraud Act prohibits:

---

[5] Plaintiffs assert that Defendants' alleged conduct violates the consumer fraud statutes of several other states and the District of Columbia. Though Plaintiffs purport to represent a nationwide class of similarly situated individuals, there has been no class certification in this case. Further, as explained above, the New Jersey choice-of-law rules dictate that the Court apply New Jersey state law to Plaintiffs' claims. Thus, the Court will analyze Plaintiffs' consumer fraud claims under the New Jersey Consumer Fraud Act only.

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J.S.A. 56:8-2. Where the alleged consumer fraud violation involves an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 462 (1994). To support an allegation of consumer fraud based on an omission, however, "the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Id.* To succeed on a private cause of action under the Consumer Fraud Act, a plaintiff must demonstrate that the defendant's unlawful practice caused him to suffer "an ascertainable loss." N.J.S.A. 56:8-19; *Weinberg v. Sprint Corp.*, 173 N.J. 233, 801 A.2d 281, 290-91 (2002).

In the instant case, as explained above, the Annuity Documents contain the very information that Plaintiffs allege was misrepresented, suppressed, or concealed. Indeed, those documents set forth the exact amounts of interest to be credited, including the first-year bonus rate and the guaranteed minimum base rate for all subsequent years. Thus, it cannot be said that Defendants engaged in a deceptive marketing scheme or concealed the true nature of the annuities. Although it may be true that Plaintiffs could have earned more interest if they had purchased annuities from another company, their dissatisfaction with Defendants' annuity is insufficient to state a claim for violation of the Consumer Fraud Act. *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998) ("Mere customer dissatisfaction does not constitute consumer fraud."). Accordingly, the Court finds that Count Seven of Plaintiffs'

14

Complaint—Violation of State Consumer Protection Statutes—fails to state a claim upon which relief can be granted.

### 5. Civil Conspiracy

In Count Six of their Complaint, Plaintiffs assert that "Defendants actively and deliberately conspired with agent banks, who helped develop, design, sale [sic] and implement the bonus annuities, to engage in and accomplish" the wrongful acts described elsewhere in the Complaint. Defendants argue that, because Plaintiffs' underlying claims fail, they cannot recover on a claim for conspiracy.

"In New Jersey, the essential elements of a civil conspiracy are: (1) [a] combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose to be achieved by unlawful means; and (4) special damages." *Farris v. County of Camden*, 61 F. Supp. 2d 307, 330 (D.N.J. 1999). To sustain an action for civil conspiracy, "a plaintiff must also point to (1) an overt act of one or more of the conspirators in furtherance of the conspiracy; and (2) consequential damage to the rights of another, of which the overt act is the proximate cause." *Id.* A claim for civil conspiracy will not lie, however, "unless defendants committed an act which would be actionable even without the conspiracy." *Id.* Because, as explained above, Plaintiffs' substantive claims fail as a matter of law, there is no basis to support Plaintiffs' claim for civil conspiracy.

## III. CONCLUSION

For the reasons expressed above, the Court grants Defendants' motions and dismisses Plaintiffs' Complaint with prejudice pursuant to Rule 12(b)(6).  An appropriate order accompanies this opinion.

/s/ Joel A. Pisano<br>JOEL A. PISANO, U.S.D.J.

Dated: May 11, 2007